IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ESCO MARINE, INC. & <br> ESCO METALS, LLC <br>    PLAINTIFFS, <br> <br> VS. <br> <br> JUAN CARLOS VILLANUEVA VIRGEN, and <br> JUAN CARLOS VILLANUEVA <br> VIRGEN & ASSOCIATES, <br>    DEFENDANTS. | § § § § § § § § § § § § | CIVIL ACTION NO. _____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW Plaintiffs, ESCO Marine, Inc. and ESCO Metals, LLC, and for cause of action against Defendants Juan Carlos Villanueva Virgen and Juan Carlos Villanueva & Associates, would respectfully show as follows:

### I. PARTIES

1.1 Plaintiff, ESCO Marine, Inc. ("ESCO Marine"), is a United States (Delaware) corporation with its principal place of business in Texas located in Brownsville.

1.2 Plaintiff ESCO Metals, LLC, is a United States (Delaware) limited liability company with its principal place of business in Texas located in Brownsville. ESCO Metals is a wholly-owned subsidiary of ESCO Marine.

1.3 Defendant, JUAN CARLOS VILLANUEVA VIRGEN ("Villanueva"), is an individual who is a citizen and resident of the Republic of Mexico. As described in more detail below, Villanueva purposefully availed himself of the privileges and laws of the United States, including Texas, through his numerous business dealings with Plaintiffs in his capacity as a venture capitalist, stockholder and manager of the Plaintiff business entities whose principal

offices are located in Texas. In addition, Villanueva entered into contracts and committed one or more torts and contractual breaches in the State of Texas as described below.

1.4     Defendant, JUAN CARLOS VILLANUEVA VIRGEN & ASSOCIATES ("JCVVA"), is an assumed name under which Villanueva does business. Defendant Villanueva is the principal, chief officer and director of JCVVA and for all practical and legal purposes, including this Complaint, JCVVA and Villanueva are one in the same. JCVVA regularly and systematically does business in Texas in its capacity as a venture capitalist and a manager of ESCO Metals. Additionally, JCVVA entered into contracts and committed one or more torts and/or contractual breaches in the State of Texas as described below.

## II. SUBJECT MATTER JURISDICTION

2.1     The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the suit is between citizens of an American state and citizens of a foreign state, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

2.2     Additionally, pursuant to the terms of the June 1, 2009 Agreement described in detail below, the parties stipulated to the jurisdiction of the U.S. Federal Court, Brownsville, Texas, to settle any disputes thereunder.

## III. PERSONAL JURISDICTION

3.1     Defendants are Mexican citizens which reside in and have their primary place of business and principal office in Guanajuato, Mexico, but which conduct business on a regular and systematic basis in multiple states of the United States including Texas, as more fully described in paragraph VI below and incorporated herein. Therefore, this Court has general jurisdiction over the Defendants. In addition, this Court has specific jurisdiction over the Defendants because they engaged in various business transactions in Texas culminating in agreements with Plaintiffs in Texas, and they acquired stock and management in Plaintiffs' business entities whose principal offices were located in Texas. Additionally, Defendants committed acts in

Texas resulting in the various contractual breaches and torts in Texas as more fully described below and incorporated herein.

3.2   Additionally, pursuant to the terms of the June 1, 2009 Agreement referenced below, the Defendants stipulated to the jurisdiction of the U.S. Federal Court, Brownsville, Texas, to settle any disputes thereunder.

## IV. VENUE

4.1   Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## V. CONDITIONS PRECEDENT

5.1   All conditions precedent have been performed or have occurred.

## VI. FACTS

6.1   Plaintiff ESCO Marine is generally engaged in the metals trade with various operations and divisions including ship dismantling and recycling, metals and materials salvage, shredding, processing and sales. ESCO Marine's operations are carried out in multiple locations in South Texas. Some of the business and operations of ESCO Marine are conducted through wholly-owned and partially-owned subsidiaries, each bearing some variation of the ESCO name.

6.2   Defendant Villanueva is a Mexican businessman and venture capitalist. Villanueva and the assumed name under which he conducts some business, JCVVA, are no strangers to the metals trade. They represented to Plaintiffs that they presently have or have had other interests in metals business apart from their dealings with Plaintiffs. For purposes of this complaint, Villanueva and his assumed business name, JCVVA are one in the same as Villanueva represented to Plaintiffs. To the extent there is any corporate entity known as JCVVA, it should be disregarded because of the unity of interest between Villanueva and JCVVA, and the fact that all corporate formalities were disregarded.

6.3     During the relevant period described below, Villanueva advanced various sums of money to ESCO Marine to increase Plaintiff's working capital in connection with a joint venture to expand ESCO Marine's business. In return for ESCO's use of the money, Villanueva charged commercially high interest rates and fees to ESCO Marine.

6.4     On or about March 3, 2010, Villanueva entered into a Release ("the 3/3/10 Release") expressly allocating and acknowledging a portion of Villanueva's advances, being U.S. $2,665,000, were converted to Villanueva's purchase of 2,665 class "B" preferred shares of ESCO Marine and consequently, the only outstanding sum of money owed by ESCO Marine to Villanueva was U.S. $1,024,000[1]. Significantly, in addition to the Release of ESCO Marine and all of its subsidiaries, Villanueva expressly acknowledged he "has no investment, interest, claim or right against the subsidiaries." *See Exhibit 1, a copy of the 3/3/10 Release.*

6.5     On or about June 1, 2009, Villanueva, individually and through an entity which he funded to make some of the advances to ESCO Marine, entered into an Agreement (the "6/1/09 Agreement") whereby the parties accomplished two objectives. First, they memorialized a more detailed breakdown of the total sum advanced to ESCO Marine by Villanueva, individually or through his funding entity (as referenced in the 5/26/09 Release), in exchange for the 2,665 series Class B Preferred Stock. Second, the parties agreed when, how and under what conditions profit and stock dividends would be paid by ESCO Marine to Villanueva or his designee. *See Exhibit 2, a copy of the 6/1/09 Agreement*[2].

6.6     On or about May 26, 2010, ESCO Marine, its subsidiary ESCO Metals, Villanueva and the funding entity entered into another agreement entitled "Acknowledgment of Monies Owed to Carlos Juan Villanueva Virgen & Cuarto-J Trading LLC" (the "5/26/10 Acknowledgment")

---

[1] The 3/3/10 Release refers to $1,034,000 ($10,000 more), but this is a scrivener's error which was corrected by subsequent agreements and acknowledgements by the parties.
[2] Notably, paragraph 6 provides that the law of Texas shall govern the Agreement and the parties agree to the jurisdiction of the U.S. Federal Court, Brownsville, Texas to "settle any disputes hereunder".

whereby said four (4) parties acknowledged that: (a) Defendant Villanueva and/or through the funding entity had advanced a total of $4,574,040.50 in various denominations and amounts to Plaintiff ESCO Marine and some its wholly owned subsidiaries; (b) that Villanueva had accepted $2,665,801.61 in the form of Preferred Stock (the 2,665 Class B shares) in ESCO Marine as partial payment for some of his oldest advances; (c) that the remaining $1,024,000.00 of Villanueva's advances had been invested in a Management Contract between Villanueva and ESCO Marine in ESCO Metals; (d) that $395,000.00 had already been paid to Villanueva by ESCO Marine in accordance with the profit payments contemplated in the 6/1/09 Agreement; and (e) it was agreed that $489,238.89 was still owed to Villanueva by ESCO Marine. *See Exhibit 3, a copy of the 5/26/10 Acknowledgement Agreement.*

6.7     Consistent with the 5/26/10 Acknowledgement Agreement, on May 26, 2010, ESCO Marine and JCVVA entered into a Management Contract for ESCO Metals (the "Management Contract"), pursuant to which JCVVA invested the remaining $1,024,000.00 owed by ESCO Marine into ESCO Metals pursuant to said Management Contract. The Management Contract provided that ESCO Marine and JCVVA would jointly manage ESCO Metals and Villanueva would receive 50% of ESCO Metals' profits, but only on the following express terms: (a) that within 30 days from May 26, 2010, JCVVA was required to contribute an additional $976,000.00 to ESCO Metals; and (b) that JCVVA would provide ESCO Metals with the necessary working capital, as needed, to fund operations at ESCO Metal's Brownsville location and later the Donna, Texas and Corpus Christi, Texas feeder locations as well. *See Exhibit 4, the Management Contract.* As described later, JCVVA failed to comply with the express capital and funding terms of the Management Contract, causing ESCO significant damages, lost business opportunities and revenue.

6.8     As evidenced by the various Agreements and attached schedules, by May 26, 2010, Villanueva had been repaid all of his advances in exchange for stock in ESCO Marine and a

lucrative Management Contract for ESCO Metals which could have yielded him 50% of the profits. At that point, Villanueva was indebted to ESCO Marine and ESCO Metals in the amount of $976,000 plus his working capital obligations. However, Defendant JCVVA failed to advance to the full $976,000.00 within thirty (30) days as required by the Management Contract; it only advanced $758,883.45 over a much longer period, despite repeated requests to fund the full amount. Further, despite repeated requests, JCVVA failed to provide ESCO Metals with the required working capital for the Donna and Corpus Christi feeder yards as required by the Management Contract. As a result of JCVVA's failures to comply with the Management Contract, and in order to mitigate damages, ESCO Marine was forced to divert money for its other projects into the Donna feeder yard project to prevent a financial collapse of the Donna feeder yard. The diversion of ESCO Marine's financial resources to the Donna feeder yard caused significant damages to ESCO Marine. In addition, because of JCVVA's failures to supply the necessary working capital, despite repeated requests, the Corpus Christi yard project - for which land had already been purchased - had to be abandoned completely. JCVVA's failures to comply with the Management Contract caused significant damages to ESCO Metals in the form of lost business opportunities and profit from the Corpus Christi feeder yard.

6.9   During the relevant period through January 2011, Defendant Villanueva had access to an American Express credit card owned by Plaintiff ESCO Marine for legitimate business expenses. However, Villanueva used the card for non-business related expenses in excess of $300,000. Examples include charges for Villanueva's daughter's trip to Paris and expensive personal cosmetics, to name a few. ESCO Marine was forced to pay these charges made by Villanueva to avoid cancellation of the American Express card and a claim or suit by American Express.

6.10   On February 22, 2011, pursuant to the terms of the Management Contract, ESCO Marine issued written notice to Villanueva and his attorney, exercising Plaintiff's right to terminate the Management Contract by virtue of Villanueva's multiple defaults which were explained in great

detail ("the 2/22/11 Termination Notice"). The Notice provided Villanueva with a ten (10) day period in which to cure the defaults. Finally, the Notice advised Villanueva that the personal expenses he charged on the company credit card would be offset against any amounts due unless Villanueva promptly reimbursed ESCO Marine for the charges. *See Exhibit 5, a copy of the 2/22/11 Termination Notice.*

## VII. COUNT 1 – BREACH OF CONTRACT

7.1     Plaintiffs incorporate the preceding paragraphs to establish the facts giving rise to Plaintiffs' breach of contract claim against Defendants.

7.2     The Management Contract provided in Section 6 that:

> CJVV [sic] will be in breach of this Agreement if he does not supply the additional capital as required…and ESCO Marine will have the right to take over all aspects of the business of ESCO Metals in order to protect its interest upon demonstrating in writing that such a breach has occurred.
>
> CJVV [sic] will have ten (10) days in which to cure, after Notice of Breach. Upon CJVV [sic] satisfactorily curing the breach, the Management Contract will be reinstated.
>
> If the breach is not cured within a ten (10) day period the said Management Agreement will become null and void.

7.3     On February 22, 2011, Plaintiff ESCO Marine sent written correspondence to Defendants and their counsel with final notice of the breaches and termination of the Management Contract. *Exhibit 5*. And ESCO Marine's notice provided Defendants with an opportunity to cure. *Id.* In response, Defendants neither cured nor attempted to cure the breaches.

7.4     ESCO Marine performed all of its obligations under the Management Contract, but the Defendants failed to perform their funding obligations. Defendants' multiple failures to perform constitute material breaches of the parties' contracts which proximately caused actual damages in having to divert ESCO Marine's funds from other projects to prevent the financial collapse of the Donna feeder yard, and consequential damages in lost business opportunity and profit for the Corpus Christi feeder yard. Such damages will be calculated and determined by the trier of fact.

7.5     Because of Defendants' breaches which they failed to cure, the Management Contract was rendered Null and Void, thereby terminating any right, interest or claim of Defendants to ESCO Metals or a profit share in same.

## VIII. COUNT 2 – BREACH OF FIDUCIARY DUTY

8.1     Plaintiffs incorporate the preceding paragraphs to establish the facts giving rise to Plaintiffs' breach of fiduciary claim against Defendants.

8.2     Villanueva and JCVVA had a fiduciary relationship with ESCO Marine and ESCO Metals because JCVVA agreed to jointly manage ESCO Metals.  However, Defendants breached their fiduciary duty by failing to contribute the monetary and working capital as required by the Management Contract, and by using the ESCO Marine's business American Express credit card improperly and without Plaintiff's authorization for personal expenses unrelated to the business ventures.

8.3     Such breaches of fiduciary duty by Villanueva and JCVV improperly benefited the Defendants which proximately caused actual damages in having to divert funds from ESCO Marine's other projects to prevent the financial collapse of the Donna feeder yard; consequential damages in lost business opportunities and/or lost revenue of the Corpus Christi feeder yard which will be calculated and determined by the trier of fact; and in excess of $300,000 in non-business related charges to the American Express account.

8.4     Because of Defendants' breaches of their fiduciary duties, Plaintiffs seek a forfeiture of any and all benefits Defendants obtained by reason of such breaches.  Such benefits include, but are not limited to, any financial gain and any rights or interests conferred to Defendants by any of the agreements.

## IX. COUNT 3 – CONVERSION

9.1     Plaintiffs incorporate the preceding paragraphs to establish the facts giving rise to Plaintiffs' conversion claim against Defendants.

9.2     Plaintiff ESCO owns the business American Express credit account.  Defendants, who acquired possession of the Plaintiff's credit card for legitimate business-related expenses, wrongfully exercised dominion and control over the credit card when Defendants improperly charged in excess of $300,000 in non-business related expenses which were not authorized by Plaintiffs.  Such actions constitute conversion.

9.3     Defendants' wrongful acts proximately caused injury to the Plaintiff.  ESCO Marine was forced to pay an amount exceeding $300,000 to American Express as a result of the improper charges made by Defendants.  Plaintiffs seeks recovery of these damages.

## X.  COUNT 4 – REQUEST FOR DECLARATORY JUDGMENT

10.1    Plaintiffs also bring suit for a declaratory judgment under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.  Plaintiffs incorporate the preceding paragraphs to establish the facts giving rise to this dispute and to establish the case-or-controversy requirement.

10.2    Plaintiffs seek a declaration that the Management Contract is terminated and declared Null and Void by virtue of Defendants' breaches and failure to cure same, as described above.

10.3    Plaintiffs seek a declaration that Defendants have no right or interest in and to ESCO Metals, LLC., including any profit sharing therefrom.

10.4    Plaintiffs seek a declaration that Defendants have no rights or interests in and to the following wholly owned subsidiaries of ESCO Marine, Inc.:  ESCO Shredding, LLC., ESCO Transportation, LLC., ESCO Metals of Corpus Christi, LLC., Westward Recycling, LLC. and Frontier Aviation, LLC.

10.5    The declaratory relief is necessary from this Court because Defendants, have asserted rights and interests to the ESCO Metals Management Contract and to ESCO Marine, Inc.'s subsidiaries.

## XI. DAMAGES

11.1   Plaintiffs seek actual damages constituting the sum of money ESCO Marine was required to divert from other projects to prevent the financial collapse of the Donna feeder yard, and the resulting damages caused to ESCO Marine by having to divert those funds from other projects. These damages were proximately caused by Defendants' breaches of contract and/or breaches of fiduciary duties as described above.

11.2   Plaintiffs also seek damages for lost business opportunities and lost profit for the Corpus Christ feeder yard project which failed because of Defendants' failure to contribute the required funding.  These damages, which will be determined by the jury, were proximately caused by Defendants' breaches of contract and/or breaches of fiduciary duties as described above.

11.3   Plaintiffs also seek damages for Defendants improper, unauthorized, non-business related charges in excess of $300,000 to ESCO Marine's American Express card.  Such damages were proximately caused by Defendants' breaches of fiduciary duties and conversion as described above.

11.4   Finally, Plaintiffs seek exemplary damages by virtue of Defendants' intentional, malicious and extreme conduct in committing the breaches of fiduciary duties and conversion described above.

## XII. ATTORNEY FEES & COSTS

12.1   Plaintiff is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice & Remedies Code, Chapter 38, because this is a suit for breach of contract, and the terms of the written contract further provide that the Plaintiff is entitled to recover reasonable and necessary attorney fees.

12.2   Plaintiffs are further entitled to recover reasonable and necessary attorney fees because this is also a suit for declaratory relief, and the Court can award attorney fees in a diversity suit for declaratory relief when applicable state law would provide for them.

## XIII. PRAYER

13.1    For these reasons, Plaintiff asks for judgment against Defendants for the following:

      a.    Actual and consequential damages as described above;
      b.    Exemplary damages to be awarded by the trier of fact;
      c.    Prejudgment and postjudgment interest;
      d.    Return of the Plaintiff's business American Express card;
      e.    Declarations from this Court as requested herein;
      f.    Reasonable attorney fees and expenses;
      g.    Costs of suit;
      h.    All other relief, both legal and equitable to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

By:   /s/ James H. Hunter
James H. Hunter
State Bar No. 00784311
Federal ID No. 15703
Robert L. Guerra, Jr.
Texas State Bar No. 24036694
Federal ID No. 570991
E-Mail: jim.hunter@roystonlaw.com
E-Mail: robert.guerra@roystonlaw.com

**ATTORNEYS FOR PLAINTIFFS ESCO MARINE, INC. AND ESCO METALS, LLC**

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

55 Cove Circle
Brownsville, Texas 78521
(956) 542-4377 (Telephone)
(956) 542-4370 (Facsimile)